# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
June 19, 2019 Session

## LARRY DANIEL CANTEY v. ALYSON LINDSAY CANTEY (VIOLETTE)

**Appeal from the Chancery Court for Gibson County**
No. 22159     George R. Ellis, Chancellor

—————————————————————

### No. W2018-01331-COA-R3-CV

—————————————————————

This appeal involves a petition to modify an agreed permanent parenting plan. The trial court denied the petition. We conclude that the trial court's order does not contain sufficient findings of fact and conclusions of law. We vacate the order of the trial court and remand for entry of an appropriate order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

CARMA D. MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and THOMAS R. FRIERSON, II, J., joined.

G. Michael Casey, Jackson, Tennessee, for the appellant, Alyson Lindsay Cantey (Violette).

Michael R. Hill, Milan, Tennessee, for the appellee, Larry Daniel Cantey.

## OPINION

### I.   FACTS & PROCEDURAL HISTORY

Alyson Lindsay Cantey (Violette) ("Mother") and Larry Daniel Cantey ("Father") divorced in September 2016. Together, they have two minor children, a daughter ("Daughter") and a son ("Son"). At the time of the divorce, the parties executed a marital dissolution agreement and an agreed permanent parenting plan, which designated Mother as the primary residential parent. However, Mother and Father enjoyed equal parenting time with the children. All major decisions required joint agreement of the parents, and mediation was the anticipated means of resolution to any impasse.

When the parenting plan was entered, Mother and Father resided in Milan, Tennessee. Following the divorce, Mother and Father both remarried, and Mother moved to Medina, Tennessee. Daughter is disabled and is enrolled in the special education program at Milan Middle School. Neither parent desires to make any changes in Daughter's schooling. Son, at the time of the divorce, was not yet enrolled in elementary school.

On March 19, 2018, Mother filed a petition to modify the existing permanent parenting plan due to an alleged material change of circumstance.[1] Mother filed a new proposed parenting plan seeking to modify several provisions, including the parties' joint educational decision-making authority. Alternatively, if her petition was denied, Mother sought the authority to enroll Son in school at Medina Elementary School. Mother relied primarily on her designation as primary residential parent to justify her claimed right to make this decision.

On April 20, 2018, Father filed a response to Mother's petition (but no counter-petition), denying that a material change of circumstance existed to change the parties' joint decision-making. However, Father acknowledged that the parties had not been following the existing parenting plan and agreed to revise the residential schedule and child support provisions. Father attached to his response a proposed permanent parenting plan, asserting that his plan accurately reflected the modifications to which the parties informally agreed in the fall of 2017, except for the issue of Son's schooling. The parties attempted to mediate the issues but were unsuccessful.

On June 6, 2019, the trial court conducted a hearing on Mother's petition and heard testimony from each party. At trial, both parties submitted competing parenting plans that modified the terms of their original plan. The testimony of each party largely centered on the issue of the appropriate school for Son, which remained in dispute. Mother testified that it is in the children's best interest to be in separate school districts, based on their educational goals and circumstances. She believed that Milan Elementary School was meeting the needs of Daughter and was the best school for Daughter. However, she believed that it was in Son's best interest to attend Medina Elementary School. She described Son as being very bright. She testified that he, at age five, already knew the periodic table of elements and different language. Her selection of Medina Elementary School was based on her research comparing it and Milan Elementary School. She testified that Medina Elementary was globally higher on all test scores than

---

[1] Mother erroneously styled her pleading as a motion to modify rather than a petition to modify, but this fact "is not of ultimate consequence," because we give effect to the substance of her pleading rather than its form. *Stricklin v. Stricklin*, 490 S.W.3d 8, 12 (Tenn. Ct. App. 2015).

Milan Elementary.[2]  Mother further testified to additional modifications she requested in the existing parenting plan, including altering the residential parenting time to a week-to-week schedule; allowing the children to be in her care on "school-free" days; and removing the special provisions in the existing plan.  Alternatively, in the event the court did not modify the existing plan, Mother believed as the primary residential parent she should be allowed to make the final decision regarding Son's education.

Father testified that he did not believe that it was in the best interest of the children to attend separate schools.  He agreed that Milan Elementary School was the best school for Daughter and believed that school was appropriate for Son based on the services provided to Daughter.  He also testified that Son had been involved in extracurricular activities in Milan and developed relationships with other children from Milan.  Father indicated his strong preference for Milan Elementary School was based on his philosophy that education was not just about academic success, but also moral upbringing.  Father expressed concerns that if the children attend different schools, Son will develop an idea of being separate from his sister.

At the conclusion of the testimony, the trial judge announced his oral ruling denying Mother's petition.  The court entered the following order on July 3, 2018:

> This Cause, came to be heard on the 6th day of June, 2018, before the Honorable Chancellor George R. Ellis in the Chancery Court of Gibson County, Tennessee upon the Defendant's Motion to Modify Permanent Parenting Plan, Plaintiff's Response, and statements of the parties made in open Court, from all of which the Court finds as follows:
>
> 1.  The Court finds that the parties contracted a permanent parenting plan upon their divorce on September 19, 2016.
>
> 2.  Mother, Alyson Lindsay Cantey Violette, urges the Court that materially substantial changes in circumstances have occurred warranting the modification.
>
> 3.  In addition, the mother desires to leave the Daughter . . . in the school system where she is presently enrolled and to remove the Son . . . from the system where he has been on track to enter for the last three years, by agreement of both parties, to another system where the Mother has relocated to in the last year.

---

[2] The record contains no documentary evidence to support Mother's assertion regarding the test scores.

4. Mother alleged that the system where she wishes to move her son is superior without presenting any proof of the same.

5. The Father, Larry Daniel Cantey, objects to this move for his son due to separation of the siblings and the demographic differences in the two systems.

6. The transcript from the Judge's ruling is attached as EXHIBIT A.[3]

ALL OF WHICH IS SO HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. The Court finds that the motion by the mother is for her convenience and not in the best interest of the children.

2. The Mother's Motion to Modify the Permanent parenting plan is denied.

Mother timely filed a notice of appeal.

## II. ISSUES PRESENTED

Mother presents the following issues, which we have slightly reworded and re-ordered, for review on appeal:

1. Whether the trial court erred in refusing to modify the parties' permanent parenting plan order, despite the fact that the parties both asked that it be modified.
2. Whether the trial court erred by not allowing Mother, the primary residential parent, to determine which school Son attends.

For the following reasons, we vacate the order of the trial court and remand for further proceedings.

## III. DISCUSSION

We first address Mother's and Father's arguments that the trial court erred in failing to modify the parties' permanent parenting plan because both of them requested that it be modified. Here, the parties agree that a material change in circumstance has

---

[3] The transcript provides no additional findings of fact or conclusions of law.

4

occurred to warrant modification of their residential parenting time.[4] However, Father disputes that a material change in circumstance existed to warrant modification of the parties' decision-making authority, as requested by Mother.

The threshold issue, when considering a petition to modify a permanent parenting plan, is whether a material change of circumstance has occurred since the court's prior custody order. *See* Tenn. Code Ann. § 36-6-101(a)(2)(B); *Armbrister v. Armbrister*, 414 S.W. 3d at 685, 697-98 (Tenn. 2013). Only after a material change of circumstance has been found must the court decide whether modification is in the child's best interest. *Armbrister*, 414 S.W. 3d at 705. "The determinations of whether a material change of circumstances has occurred and where the best interests of the child lie are factual questions." *In re T.C.D.*, 261 S.W. 3d 734, 742 (Tenn. Ct. App. 2007).

In this case, one of Mother's requests is a modification of decision-making authority for educational decisions. As this Court has previously explained:

> A modification in decision-making authority is analyzed utilizing the same standards governing any modification of the parenting plan. *See Gider v. Hubbell*, No. M2016-00032-COA-R3-JV, 2017 WL 1178260, at *5 (Tenn. Ct. App. Mar. 29, 2017) (citing *Colley v. Colley*, No. M2014-02495-COA-R3-CV, 2016 WL 3633376, at *10 (Tenn. Ct. App. June 28, 2016), *perm. app. denied* (Tenn. Nov. 17, 2016) (analyzing a parent's request for sole decision-making authority under the material change analysis)). Therefore, once the existence of a material change in circumstance has been found, the trial court should consider the factors listed in Tennessee Code Annotated § 36-6-106(a) to determine whether a modification is in the children's best interest. *See Allen* [*v. Allen*, No. W2016-01078-COA-R3-CV,] 2017 WL 908319, at *8 [(Tenn. Ct. App. Mar. 7, 2017)].

*Brunetz v. Brunetz*, 573 S.W. 3d 173, 184 (Tenn. Ct. App. 2018).

Tennessee Code Annotated section 36-6-407 gives further direction to courts in dealing with the issue of decision-making. Section 36-6-407(b) states in relevant part: "The court **shall** order sole decision-making to one (1) parent when it finds that: . . . Both parents are opposed to mutual decision making; or . . . [o]ne (1) parent is opposed to mutual decision making, and such opposition is reasonable in light of the parties' inability to satisfy the criteria for mutual decision-making authority." *Id*. (emphasis added). In determining who should be the sole decision-maker the trial court must consider the following criteria:

---

[4] The parties indicated at oral argument that they agree a material change of circumstance exists to modify the residential parenting schedule.

(1) The existence of a limitation under § 36-6-406;

(2) The history of participation of each parent in decision making in each of the following areas: physical care, emotional stability, intellectual and moral development, health, education, extracurricular activities, and religion; and whether each parent attended a court ordered parent education seminar;

(3) Whether the parents have demonstrated the ability and desire to cooperate with one another in decision making regarding the child in each of the following areas: physical care, emotional stability, intellectual and moral development, health, education extracurricular activities, and religion; and

(4) The parents' geographic proximity to one another, to the extent that it affects their ability to make timely mutual decisions.

Tenn. Code Ann. § 36-6-407(c)(1)-(4).

Our role on appeal is to review the specific findings of the trial court against the evidence in the record. *Kathryne B.F. v. Michael B.*, No. W2013-01757-COA-R3-CV, 2014 WL 992110, at *7 (Tenn. Ct. App. Mar. 13, 2014). This court has held that "[f]indings of fact are particularly important in cases that involve the custody and parenting schedule of children." *In re Connor S.L.,* No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at *4 (Tenn. Ct. App. Nov. 8, 2012) (quoting *Hyde v. Bradley,* No. M2009-02117-COA-R3-JV, 2010 WL 4024905, at *3 (Tenn. Ct. App. Oct. 12, 2010)).

Findings of fact are also required by the Tennessee Rules of Civil Procedure. Rule 52.01 requires that a trial court make appropriate findings of fact and separate conclusions of law following a bench trial. This Court has previously explained the importance of this Rule to the appellate process:

[T]he requirement to make findings of fact and conclusions of law is "not a mere technicality." *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009). Instead, the requirement serves the important purpose of "facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." *Id.*; *White v. Moody*, 171 S.W.3d 187, 191 (Tenn. Ct. App. 2004); *Bruce v. Bruce*, 801 S.W.2d 102, 104 (Tenn. Ct. App. 1990). "Without such findings and conclusions, this court is left to wonder on what basis the court reached its ultimate decision." *In re K.H.*, 2009 WL 1362314, at *8 (quoting *In re M.E.W.* No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004)).

*Westfall v. Westfall*, No. E2017-01819-COA-R3-CV, 2018 WL 2058198, at *3 (Tenn. Ct.

App. May 2, 2018) (quoting *Babcock v. Babcock*, No. E2014-01670-COA-R3-CV, 2015 WL 1059003, at *6 (Tenn. Ct. App. Mar. 9, 2015)).

Shifting our attention to the present case, the trial court denied Mother's petition as a whole, stating that the petition was for her convenience and not in the best interest of the children. The Court did not make any findings as to whether a material change in circumstance had occurred, or state whether the parties agreed on that issue at trial. Further, there is nothing in the record to show us that the court conducted a best interest analysis. According to our Supreme Court, "[t]here is no bright-line test by which to assess the sufficiency of factual findings, but 'the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue.'" *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013) (quoting 9C *Federal Practice and Procedure* § 2579, at 328).[5]

The parents are unable to exercise joint decision-making regarding Son's education and Mother has filed a petition to modify their decision-making authority. Therefore, the trial court is statutorily required to make findings pursuant to Tennessee Code Annotated section 36-6-407(b) to determine whether the decision-making authority in the parenting plan should be modified. The evidence is clear that Mother and Father cannot agree upon which school Son should attend, based upon their individual assessments of Son's educational needs. The record indicates both parents believe Son's education is of great importance to his welfare. Despite this evidence the trial court failed to designate a primary decision-maker for Son's education or make any findings as to the issue. *See generally Coley v. Coley*, No. M2007-00655-COA-R3-CV, 2008 WL 5206297, at *7 (Tenn. Ct. App. Dec. 12, 2008). The absence of those findings hinders our ability to review the findings against the evidence.

Because the court did not make the requisite findings, our ability to review the case is limited. We cannot discern from the record whether the court erred or abused its discretion. "Appellate courts have two options when a trial court's factual findings fail to

---

[5] Even if we consider the trial court's denial of Mother's petition as an implicit finding that a material change of circumstance had not occurred, we are perplexed at how the trial court came to that conclusion. The proposed parenting plans submitted by both Mother and Father indicate that they agreed to modify the residential schedule. The trial court's order does not acknowledge any agreement between the parties. It denies Mother's petition, stating it "is for her convenience and not in the best interest of the children." Further, based on the evidence presented, we cannot see how the court arrived at its conclusion that Mother seeking to enroll Son in Medina Elementary is for her convenience. It is undisputed that Daughter will remain in school in Milan. If Son attends school in Medina, Mother will have to transport the children to and from two different schools each day; this would not reasonably be more convenient for a parent.

satisfy the Rule 52.01 requirement." *Trezevant v. Trezevant*, 568 S.W. 3d 595, 623 (Tenn. Ct. App. 2018). One remedy is the appellate courts may conduct an independent analysis of the record. *See Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *5 (Tenn. Ct. App. Feb. 22, 2013) (noting that when faced with a trial court's failure to make specific findings, "the appellate courts may 'soldier on' when the case involves a clear legal issue, or when the court's decision is readily ascertainable.") (citations omitted). The alternative and more modern remedy is to vacate the decision and remand the case to the trial court with instructions to issue sufficient findings of fact and conclusions of law. *See, e.g., In re Caleb F.*, M2016-01584-COA-R3-JV, 2017 WL 5712992, at *6-7 (Tenn. Ct. App. Nov. 28, 2017); *Pandey*, 2013 WL 657799, at *5-6; *Hardin v. Hardin*, No. W2012-00273-COA-R3-CV, 2012 WL 6727533, at *5-6 (Tenn. Ct. App. Dec. 27, 2012); *In re Connor S.L.*, 2012 WL 5462839, at *7.

For us to conduct a meaningful appellate review, in the event that the parties do not stipulate regarding the existence of a material change of circumstances, the trial court must first make detailed findings of fact. If a material change of circumstance exists, the trial court must conduct a best interest analysis utilizing the factors in Tennessee Code Annotated section 36-6-106(a) to determine whether a modification of the permanent parenting plan is warranted.[6] Because the record does not contain required findings as to either the existence of a material change of circumstance or an analysis of the best interest of the child, this Court remands this matter to the trial court for failure to comply with Tennessee Rule of Civil Procedure 52.01.

We next move to Mother's issue of whether she should be allowed, as primary residential parent, to determine the school that Son attends. The only findings made by the trial court on this issue were that (1) Mother presented no evidence to show that one school was "superior"; (2) the request was made for the convenience of Mother; (3) and the request was not in the best interest of the children. Given that Mother did in fact present testimonial evidence to support her request and the trial court did not evaluate this evidence, we again conclude that the trial court's findings are deficient. Consequently, as with Mother's first issue, this issue is also remanded to the trial court to make the necessary findings of fact. We note, however, that this issue may become moot for purposes of this appeal once the trial court determines which parent is authorized to make the educational decisions for the children. In the event that this issue remains viable, the trial court is instructed to make all necessary findings of fact and conclusions of law supporting its decision as required by law.

---

[6] This Court has vacated the judgments of trial courts where they failed to make findings to support their rulings or where they failed to engage in a best interest analysis. *See, e.g., Iman v. Iman*, No. M2012-02388-COA-R3-CV, 2013 WL 7343928, at *13 (Tenn. Ct. App. Nov. 19, 2013 (vacating the judgment of the trial court when it failed to make appropriate findings of fact and failed to "make an explicit finding that modification [of the residential parenting schedule] was in the child's best interest.")

## IV. CONCLUSION

We again encourage the trial court to "'be as precise as possible in making child custody findings' in order to facilitate meaningful appellate review." *Belardo v. Belardo*, No. M2012-02598-COA-R3-CV, 2013 WL 5925888, at \*7 (Tenn. Ct. App. Nov. 1, 2013) (quoting *In re Elaina M.*, No. M2010-01880-COA-R3-JV, 2011 WL 5071901, at \*8 (Tenn. Ct. App. Oct. 25, 2011)).

For the foregoing reasons, we vacate the trial court's judgment and remand this matter to the trial court with instructions to make specific findings of fact and conclusions of law. Costs of the appeal are taxed equally to appellant, Alyson Lindsay Cantey (Violette), and to appellee, Larry Daniel Cantey, for which execution may issue if necessary.

_____
CARMA D. McGEE, JUDGE